---

THE TUB.

(District Court, E. D. Pennsylvania. January 22, 1918.)

Nos. 8, 12.

MARITIME LIENS ☞65—EVIDENCE—NEGLIGENCE—BOAT BREAKING FROM ANCHORAGE.

The breaking away from her anchor of a motorboat and her consequent injury *held*, on the evidence, not due to any fault of libelant, which was making repairs on her, but was not charged with her care, but to the insufficiency of her anchor and cable, of which the owner had previously been advised.

In Admiralty. Suit by the Hall Engine Company against the gasoline power vessel Tub, Harry P. Richardson, claimant, with cross-libel. Decree for libelant, and cross-libel dismissed.

Maurice G. Belknap of Philadelphia, Pa., for libelant.
Francis B. Biddle, of Philadelphia, Pa., for the Tub.

BRADFORD, District Judge. The Hall Gas Engine Company has libeled the gasoline power vessel "Tub" for the recovery of the unpaid balance of the price of certain work, materials and repairs alleged to have been done and furnished by the libelant upon and to the "Tub" in 1913 and 1914. The libel is filed under the act of June 23, 1910 (36 Stat. 604, c. 373; Comp. St. 1916, § 7787), providing that any per-

son furnishing repairs, supplies or other necessaries to a vessel, whether foreign or domestic, upon the order of the owner shall have a maritime lien, enforceable by proceedings in rem.

It appears from the evidence that libelant is and for a number of years has been engaged at Bridesburg, Pennsylvania, in the marine gasoline engine business, and on or about October 1, 1913, agreed with Harry P. Richardson, the owner of the "Tub," to install in that vessel an open base engine of the type manufactured by the libelant, and known as the Hall engine, in place of the Globe engine then used on her; the engine so to be installed to cost $450, and a credit of $150 to be given to Richardson for the Globe engine which was to be the property of the libelant; that the Hall engine was duly installed on the "Tub" and Richardson then agreed to pay libelant the further sum of $70.87 for work, labor and other incidental expenses in connection with the installation, making altogether $370.87 due to the libelant after deducting the credit of $150 for the Globe engine; and that Richardson subsequently paid to the libelant on account $335, leaving a balance due of $35.87. Richardson claims that the last mentioned sum represents his full indebtedness to the libelant, in the absence of any cross or counter-claim against the latter. But it appears from the evidence and from Richardson's answer and cross-libel that in December, 1913, the libelant agreed to install on the "Tub" a Paragon clutch in place of the Hall engine clutch in order to lessen noise and vibration, and to make no charge for the Paragon clutch, but only for the installation of the same. Pursuant to this agreement the Paragon clutch was furnished and installed. The libelant also at the request of Richardson installed on the "Tub" a magneto and deck control. For work, labor and materials necessary to the making of these and other improvements done and furnished in good faith the libelant was, I think, entitled to receive compensation somewhat in excess of $155.52 now claimed by it. For the sake of securing an early settlement from Richardson libelant, however, reduced its bill to the above mentioned sum.

Richardson in his answer and cross-libel alleges that he has suffered damage to the amount of $490 through the negligence of the libelant, in that by reason of delay in the repairing of the "Tub" he was deprived of her use during a certain period resulting in damage to him to the amount of $240. This claim has been abandoned by the respondent. He further alleges that from the negligence of the libelant the "Tub" on or about January 1, 1914, broke away from her anchorage and sustained damage to the extent of $250. The evidence does not, I think, justify the making of a demand for compensation in this connection. The breaking away of the "Tub" from her anchorage and the injury she consequently received resulted from the insufficiency of her anchor and cable, or one of them. The evidence shows that during a preceding period of more than two months Richardson's attention had repeatedly been called to such insufficiency both by the witness Wiser and the libelant, and he had repeatedly promised but carelessly omitted to correct such insufficiency. That he assumed the risk involved in it is to be gathered from his own testimony. He stated:

"Mr. Wiser did speak to me about the anchor, first about that, and I said that the anchor had held me previously for two or three seasons, and that the job would soon be over and I would be off on my way, and he need not worry about it, or something to that effect."

He further testified:

"Q. You have heard Mr. Wiser and Mr. Hall say that they urged you to get a new cable. Did they do so? A. I think possibly Mr. Hall spoke to me, and I judge he did. I do not recollect. Q. Why did you not get a new cable? A. I considered that the cable would do, when I went away I would probably outfit again, and as the boat was tied up to the slip I thought the cable would do."

The libelant did not undertake to insure the safety of the "Tub" during the installation of the Hall engine and Paragon clutch. Nor did it assume the risk of damage to the vessel from the weather. While the libelant was a manufacturer and installer of electric motor engines for small vessels, it did not have a dock in which they could lie. Wiser had a dock or slip in the vicinity at which Richardson had previously stopped, and in taking the "Tub" to Bridesburg on the occasion in question he was advised by the libelant to arrange with Wiser for the care of his vessel. He accordingly left her with him, and, as has been said, was informed of the insufficiency of the anchor and cable. The breaking away of the "Tub" from her anchorage and her consequent injury was on the evidence to be attributed to the carelessness of her owner, and not to any fault on the part of the libelant.

For the above reasons the libelant is entitled to a decree against the "Tub" for the payment of the above mentioned sum of $155.52, with interest and costs, and to a decree dismissing the cross-libel of Richardson, with costs.

Decrees in accordance with this opinion may be prepared and submitted.